**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**

| | |
|---|---|
| JTH TAX LLC d/b/a LIBERTY TAX SERVICE, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. _____ ) |
| SEUNG LEE, | ) ) |
| THE LEE GROUP, INC. f/k/a P&L BUSINESS SERVICES, INC., | ) ) ) |
| Defendants. | ) ) ) |

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff JTH Tax LLC d/b/a Liberty Tax Service f/k/a JTH Tax, Inc. ("Liberty") , by and through undersigned counsel, alleges for its Verified Complaint against Defendants Seung Lee ("Mr. Lee") and The Lee Group, Inc. f/k/a P&L Business Services, Inc. ("TLG") (collectively, "Defendants"), and states as follows:

## INTRODUCTION

1.      Mr. Lee became a Liberty franchisee in Antioch, TN in 2011.  Pursuant to franchise agreements for two Liberty franchise territories, Mr. Lee agreed, among other obligations, not to compete against Liberty during the term of the franchise agreements and not to compete or solicit customers for a period of two-years post-termination.  In October 2020, Liberty discovered that Mr. Lee breached the franchise agreements by luring customers into the TN111 Franchise Location under Liberty's signage and using Liberty's good will to file their tax returns outside of Liberty's system, i.e., compete with Liberty during the term of the franchise agreements.  Liberty terminated Mr. Lee when he did not immediately cure his breaches.

1

Case 3:21-cv-00013    Document 1    Filed 01/08/21    Page 1 of 30 PageID #: 1

2. Upon information and belief, Mr. Lee and his company TLG continue to compete with and solicit Liberty's customers by preparing and filing tax returns at the former TN111 Franchise Location.  Further, Defendants are blatantly violating trademark and fair competition laws by displaying Liberty's trademarks "Liberty Tax Service", , and substantially similar marks that have the likelihood of causing consumer confusion because it appears to the consuming public that Defendants' tax preparation office is a licensed, authorized Liberty location.  Allowing Defendants to continue to use Liberty's Marks or substantially similar marks has and would continue to adversely affect the value of the business of legitimate, law abiding Liberty franchisees, thus harming the Liberty system as a whole.  Defendants have stolen a competitive advantage over all of the legitimate Liberty locations in their area through their unlicensed use of the Marks and substantially similar marks that have the likelihood of causing consumer confusion.  By displaying the Marks and substantially similar marks, Defendants divert customers seeking a Liberty location to Defendants' tax preparation offices.  By displaying the Marks and substantially similar marks without being part of the Liberty system, Defendants are not paying for the privilege of using the Marks and Liberty's goodwill.  Consequently, Defendants are in a position to offer services at their locations for a lower price than Liberty or its franchisees because they are not paying to Liberty any royalty premiums or making advertising contributions. Defendants' unlawful conduct has caused and continues to cause Liberty, and its authorized franchisees immediate and irreparable injury.

3. Liberty seeks an immediate injunction (1) enjoining Defendants from displaying the Marks, (2) enjoining Mr. Lee from breaching his non-competition and non-solicitation post-termination covenants for a period of two years from the date of the injunction order, (3) enjoining

2

TLG from tortiously interfering with Mr. Lee's performance of the Franchise Agreements, and (4) enjoining Defendants from disclosing and misappropriating Liberty's trade secrets, including but not limited to its confidential Operations Manual and customer lists and contact information. Liberty also seeks damages for Mr. Lee's breaches of the Franchise Agreements, Royalties owed under the Franchise Agreements, and Defendants' violations of the Lanham Act and Defend Trade Secrets Act.

## PARTIES

4. Plaintiff Liberty is a Delaware limited liability company with its principal place of business at 2387 Liberty Way, Virginia Beach, Virginia 23456.

5. Defendant Lee is a citizen of the State of Tennessee, with a last known business address of 3921 Apache Trail, Antioch, TN 37013.

6. Defendant TLG is a Tennessee corporation with its principal place of business at 3921 Apache Trail, Antioch, TN 37013. Lee is identified in the corporate records filed with the State as the registered agent of TLG at the same address.

## JURISDICTION AND VENUE

7. This Court has personal jurisdiction over each of the Defendants because Mr. Lee is a natural person who is a citizen of the State of Tennessee, and TLG is a Tennessee corporation.

8. This Court has original (federal question) subject matter jurisdiction over this claim pursuant to the Lanham Act, 15 U.S.C. § 1051, *et seq.*, and Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1836, *et seq.* This Court has supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy as the claims under the Lanham Act and DTSA.

9. Mr. Lee entered into valid and enforceable franchise agreements for the ownership

3

and/or operation of two Liberty franchise territories (attached hereto as **Exhibits A** (TN111), **B** (TN107)) (collectively, the "Franchise Agreements"). The Franchise Agreements contain a mandatory choice of law provision requiring that "Virginia law governs all claims that in any way relate to or arise out of this Agreement or any of the dealings of the parties hereto." Exs. A-B § 17(a).

10.     This action is properly venued in the District Court for the Middle District of Tennessee, pursuant to 28 U.S.C. §§ 1391(b)(1) and (2), because Defendants are Tennessee citizens and a substantial part of the events or omissions giving rise to the claims occurred within the Middle District of Tennessee.

## FACTUAL BACKGROUND

### Liberty

11.     Liberty is the franchisor of Liberty Tax Service® income tax preparation service centers located throughout the United States, including the State of Tennessee.

12.     Liberty owns the federally-registered Liberty Tax Service® trademarks, service marks, logos and derivations thereof, and has spent substantial time and money advertising and promoting the distinctive and well-known Liberty Tax Service® system, which sells income tax preparation and filing services and products to the public under the Marks. Franchisees license the Marks pursuant to franchise agreements.

13.     Liberty owns the service mark LIBERTY TAX SERVICE, Registration No. 2,314,991, which was registered on February 1, 2000. **Exhibit C**.

14.     Liberty owns the service mark LIBERTY TAX, Registration No. 2,465,670, which was registered on July 3, 2001. **Exhibit D**.

4

15.     Liberty owns the service mark , Registration No. 2,479,692, which was registered on August 21, 2001. **Exhibit E**.

16.     Liberty owns the service mark LIBERTY INCOME TAX, Registration No. 2,459,756, which was registered on June 12, 2001. **Exhibit F**.

17.     The service marks described in Paragraphs 13 through 16 are referred collectively as the "Marks".

18.     Pursuant to the terms of franchise agreements, Liberty discloses certain confidential information and trade secrets, including Liberty's confidential Operations Manual, methods of operation of franchise, customer information and records, and marketing information, to franchisees.

19.     Liberty has grown to be one of the largest tax preparation franchises in the United States.

20.     Liberty plays an important role in the local Virginia Beach, Virginia economy, as well as nation-wide, with a network of over 21,000 tax preparers.

21.     Liberty's busiest time of year are the months of January through April, during which time Liberty generates approximately 90% of its annual revenue.

**Obligations under the Franchise Agreements**

22.     On approximately January 25, 2011, Mr. Seung entered into a franchise agreement with Liberty for the Territory known as TN111 (the "TN111 Franchise Agreement"). Mr. Lee operated the TN111 Franchised Business from 3921 Apache Trail, Antioch, TN 37013 (the "TN111 Franchise Location") and used the phone number (615) 331-9722 in connection with the TN111 Franchised Business. On approximately January 25, 2016, Mr. Lee and Liberty renewed

5

the TN111 Franchise Agreement.  *See* <u>Ex. A</u>.  The term of the TN111 Franchise Agreement is five years with specific terms for renewal.  *Id.* § 2(a), (b).

23.     On approximately January 25, 2016, Mr. Lee entered into a franchise agreement with Liberty for the Territory known as TN107 (the "TN107 Franchise Agreement").  *See* <u>Ex. B</u>.  Mr. Lee did not open an office in the TN107 Territory.

24.     Upon information and belief, Mr. Lee operated his Liberty franchises through P&L Business Services, Inc.

25.     In exchange for Liberty's grant of a franchisee allowing him to "operate a tax return preparation business using Liberty's system and Liberty's Marks within the Territory," and specifically at the Franchised Businesses, Mr. Lee agreed to certain obligations while operating under the Franchise Agreements, as well as post-termination.   The terms, conditions, and provisions of the renewed Franchise Agreements, which governed Mr. Lee's ownership and operation of the respective Franchise Businesses, are the same in all material respects.  *See generally* <u>Exs. A-B</u>.

26.     Pursuant to the Franchise Agreements, Liberty provided Mr. Lee with training in franchise operation, marketing, advertising, sales, and business systems.  Mr. Lee also received a copy of Liberty's confidential operating, marketing, and advertising materials, which are not available to the public or to anyone who is not part of Liberty's business system.

27.     Under the Franchise Agreements, Mr. Lee agreed to pay Liberty certain royalties and fees.  <u>Exs. A-B</u> § 4(d).

28.     Pursuant to Section 6(g) of the Franchise Agreements, Mr. Lee was obligated to "use the software that Liberty provides" and "may not use, install or allow to be installed any other federal or state personal income tax return preparation or electronic filing software on any

6

computer used in the Franchised Business, without Liberty's prior written consent." <u>Exs. A-B</u>.

29.    Section 9 of the Franchise Agreements sets forth Mr. Lee's post-termination obligations, including, *inter alia*, the obligation to: refrain form further use of Liberty's Marks; not identify himself as a current or former Liberty franchisee; pay Liberty all monies owing; transfer all phone numbers used in connection with the operation of the Franchised Businesses to Liberty; deliver all original and copies of customer lists, tax returns, files, and records; return Liberty's confidential operations manual; and adhere to the Franchise Agreements' post-termination non-competition and non-solicitation covenants.

30.    Pursuant to Section 10(a) of the Franchise Agreements, Mr. Lee agreed to an in-term covenant not to compete, which provides that, during the term of the Franchise Agreements, Mr. Lee agreed "not to directly or indirectly, for a fee or charge, in the United States or Canada, prepare or electronically file income tax returns, or offer Financial Products, except in your capacity as a Liberty Tax Service franchisee using the Liberty Tax Service system to offer such products and services." *See* <u>Exs. A-B</u>.

31.    Pursuant to Section 10(b) of the Franchise Agreements, Mr. Lee agreed to a post-termination covenant not to compete "[f]or a period of two (2) years following the termination, expiration, transfer or other disposition of the Franchised Business . . . you agree not to directly or indirectly, for a fee or charge, prepare or electronically file income tax returns . . . within the Territory or within a twenty-five miles of the boundaries of the Territory." *See* <u>Exs. A-B</u>.

32.    Pursuant to Section 10(d) of the Franchise Agreements, Mr. Lee agreed to the non-solicit covenant, which states that "for a period of two (2) years following the… termination… of the Franchise Business… you will not within the Territory or within twenty-five (25) miles of the boundaries of the Territory, directly or indirectly, solicit the patronage of any person or entity

7

served by any of your Liberty offices in the last twelve (12) months that you were a Liberty franchisee… for the purpose of offering such person or entity, for a fee or charge, income tax preparation, electronic filing of tax returns, or Financial Products." *Id.*

33.     The in-term and post-termination non-competition covenant contained in Section 10(a) and (b) of the Franchise Agreements is necessary to protect Liberty's legitimate, protectable interest in their respective franchise businesses, including but not limited to:

      A.     Maintaining and protecting Liberty's goodwill and customer loyalty;

      B.     Retaining customer relationships;

      C.     Liberty's customer lists, customer identification, tax returns, and other confidential information; and

      D.     Preserving Liberty's ability to facilitate the operation of Liberty franchises where the Franchise Location is currently located.

34.     Pursuant to Section 10(h) of the Franchise Agreements, Mr. Lee agreed, "that the provisions of Section 10 are reasonable, valid and not contrary to the public interest." To that end, Mr. Lee agreed to "waive all defenses to the strict enforcement of Section 10," and further agreed "Liberty is entitled to a temporary restraining order, preliminary and/or permanent injunction for any breach of duties under any of the non-monetary obligations of Sections 9 and 10." *Id.*

35.     Pursuant to Section 10(i) of the Franchise Agreement, Mr. Lee agreed that "[t]he covenants contained in Section 10 shall survive any termination or expiration of this Agreement." *Id.*

36.     Pursuant to Section 12 of the Franchise Agreement, Mr. Lee acknowledged that information provided by Liberty to him regarding, among other things, Liberty's Marks, methods, techniques, formats, specifications, procedures, information, systems, and customer and marketing information was confidential, and was to be used only in connection with the operation of the Franchise Locations. *Id.* Pursuant to Sections 12(a) and (c) of the Franchise Agreement, Mr. Lee

8

agreed to refrain from interfering with or attempting to interfere with any of the business relationships or advantages of Plaintiff and the Marks, and from using for his benefit any confidential information from Plaintiff's proprietary manuals and business system, following transfer, termination, expiration or nonrenewal of the Franchise Agreement.

## Termination of the Franchise Agreements and Obligations under the Mutual Termination Agreement

37.     In approximately October 2020, Liberty learned that Mr. Lee was operating a tax preparation business under the name P&L Business Services Inc. and filing tax returns outside Liberty's system while under the Franchise Agreements and while displaying the Marks.

38.     On October 22, 2020, Liberty sent Mr. Lee a Notice to Cure Default identifying his breach of the Franchise Agreements' in-term covenant not to compete and for misuse of the Marks. On the same date, Liberty sent Mr. Lee additional letters requesting that Mr. Lee cure additional defaults.

39.     Because Mr. Lee had not corrected the noticed defaults, Liberty terminated the Franchise Agreements.

40.     On November 24, 2020, Liberty sent Mr. Lee a letter informing him that Liberty had terminated the Franchise Agreements due to his breach of Sections 6(p), 7(b), 8(b)(iv), 8(b)(xi), 8(c)(i), 8(c)(ii), and 10(a) of the Franchise Agreements. Therein, Liberty reminded Mr. Lee of his post-termination obligations, specifically:

- Refrain from any further use of any of the licensed marks;
- Not identify yourself as a current or former franchisee of Liberty;
- Pay to Liberty all monies owing;
- Transfer all telephone numbers used in relation to the Franchised Business to Liberty;
- Deliver to Liberty all paper and electronic copies of your customer lists, tax returns, files and records;

9

- Deliver to Liberty the Operations Manual and all updates which Liberty loaned to you

…
- Adhere to the provisions of the post-termination covenants not to compete and not to solicit.

*See also* Exs. A, B §§ 9, 10.

## Trademark Infringement, Trade Secret Misappropriation, and Breach of Non-Competition and Non-Solicitation Covenants

41.     TLG's prior name was P&L Business Services, Inc.  In 2011, the name was changed to The Lee Group, Inc.

42.     Mr. Lee is the registered agent of TLG.  Upon information and belief, Mr. Lee is the owner and an officer of TLG.

43.     According to the IRS's Electronic Return Originator ("ERO") database, TLG's registered name with the IRS is still P&L Business Services Inc. d/b/a The Lee Group, with the same mailing address, business address, and phone number as Mr. Lee d/b/a Liberty Tax Service.

44.     In 2019 and 2020, while Mr. Lee was still a Liberty franchisee under the Franchise Agreements, TLG—through Mr. Lee and/or his agents—filed tax returns at the TN111 Franchise Location using tax preparation software in the office other than that which was permitted by Liberty.  This means that TLG has been filing tax returns at the TN111 Franchise Location.

45.     While a Liberty franchisee, Mr. Lee displayed the Marks to lure customers into the Franchise Location, but then performed a bait and switch by filing the tax returns through TLG, not Liberty's system.

46.     Following Mr. Lee's termination, Mr. Lee has not transferred the phone number associated with the Franchised Business to Liberty, delivered to Liberty all paper and electronic copies of his customer lists, tax returns, files and records, or delivered to Liberty the Operations Manual and all updates.

10

47.     Following Mr. Lee's termination, Defendants continue to display the Marks or confusingly similar marks to identify their competing tax preparation services and solicit customers.

48.     Defendants are displaying the following on the exterior of the former Franchise Location facing the road (taken on December 16, 2020):





and in the interior of the office (taken on December 16, 2020):





12

49.     Mr. Lee had no right to display the Marks at any time in connection with the sale of services other than tax preparation services as a Liberty franchisee.

50.     TLG never had a right to display the Marks.

51.     Defendants are using the Marks and Confidential Information to solicit customers and compete unfairly with Liberty and its franchisees.

52.     Following Liberty's termination of the Franchise Agreements, Mr. Lee has not paid the Accounts Receivable that are owing in the amount of $46,747.36.

<u>**COUNT I**</u>
*Breach of the Franchise Agreements*
*Against Mr. Lee*
*(Monetary Claim)*

53.     Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

54.     The Franchise Agreements are valid and enforceable.

55.     Liberty has performed every obligation and condition required under the Franchise Agreements.

56.     Liberty gave notice to Mr. Lee of Liberty's termination of the Franchise Agreements on approximately November 24, 2020.

57.     Pursuant to Section 4(d) of the Franchise Agreements, Mr. Lee agreed to pay Royalties to Liberty. *See* <u>Exs. A-B</u> § 4(d).

58.     As of the filing of this Complaint, Mr. Lee has not paid Liberty $46,747.36 in Royalties owed under the Franchise Agreements.

59.     Pursuant to Section 6(g) of the Franchise Agreements, Mr. Lee agreed that all computers used in the Franchised Business would only use Liberty's software for preparing and electronically filing tax returns. *See* <u>Exs. A-B</u> § 6(g).

13

60.     Mr. Lee and his agents used computers at the TN111 Franchise Location to prepare and file tax returns using non-Liberty software while Mr. Lee was a franchisee under the TN111 Franchise Agreement.

61.     Pursuant to Section 10(a) of the Franchise Agreements, Mr. Lee agreed not to compete with Liberty during the term of the Franchise Agreements.

62.     During the term of the Franchise Agreements, Mr. Lee directly or indirectly filed tax returns at the TN111 Franchise Location outside of Liberty's system.

63.     Pursuant to Sections 9 and 10 of the Franchise Agreements, Mr. Lee agreed to post-termination obligations, including non-compete and non-solicitation covenants. *See* Exs. A-B §§ 9, 10.

64.     Upon termination of the Franchise Agreements, Mr. Lee failed to cease using Liberty's Marks, not identify himself as a current or former Liberty franchisee, pay Liberty all monies owing, transfer to Liberty the phone numbers used in connection with the Franchised Businesses, return to Liberty the confidential Operations Manual, and deliver to Liberty all copies of customer records and information.

65.     Liberty anticipates that Mr. Lee has and will continue to prepare and file tax returns post-termination at the TN111 Franchise Location.

66.     Pursuant to Section 12 of the Franchise Agreements, Mr. Lee agreed not to disclose or use Liberty's confidential information, including but not limited to its Operations Manual, customer records and contact information, for any purpose other than as a Liberty franchisee. *See* Exs. A-B § 12.

67.     Mr. Lee has used and will continue to use Liberty's Operations Manual and customer records to solicit customers to accept tax preparation services from his company, TLG

14

both during and after the term of the Franchise Agreements.

68.     Mr. Lee has breached Sections 4(d), 6(g), 9(b)-(e), (g)-(i), (k), 10(a), (b), and (d), and 12 of the Franchise Agreements.

69.     Each of Mr. Lee's foregoing breaches constitute a material breach of the Franchise Agreements.

70.     As a direct and proximate result of these breaches, Liberty has incurred and will continue to incur substantial losses, fees, and expense for which Mr. Lee is liable in an amount to be proven at trial and exceeds $46,747.36.

**COUNT II**
*Breach of the Franchise Agreements*
*Against Mr. Lee*
*(Equitable Claim)*

71.     Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

72.     The Franchise Agreements are valid and enforceable.

73.     Liberty has performed every obligation and condition required under the Franchise Agreements.

74.     Liberty gave notice to Mr. Lee of Liberty's termination of the Franchise Agreements on approximately November 24, 2020.

75.     Pursuant to Section 6(g) of the Franchise Agreements, Mr. Lee agreed that all computers used in the Franchised Business would only use Liberty's software for preparing and electronically filing tax returns.  *See* Exs. A-B § 6(g).

76.     Pursuant to Sections 9 and 10 of the Franchise Agreements, Mr. Lee agreed to post-termination obligations, including non-compete and non-solicitation covenants.  *See* Exs. A-B.

15

77.     Mr. Lee and his agents used computers at the TN111 Franchise Location to prepare and file tax returns using non-Liberty software while Mr. Lee was a franchisee under the TN111 Franchise Agreement.

78.     Liberty anticipates that Mr. Lee has and will continue to prepare and file tax returns post-termination at the TN111 Franchise Location.

79.     Upon termination of the Franchise Agreements, Mr. Lee failed to cease using Liberty's Marks, not identify himself as a current or former Liberty franchisee, pay Liberty all monies owing, transfer to Liberty the phone numbers used in connection with the Franchised Businesses, return to Liberty the confidential Operations Manual, and deliver to Liberty all copies of customer records and information.

80.     Defendants used and will continue to use Liberty's Operations Manual and customer records to solicit customers to accept tax preparation services from TLG both during and after the term of the Franchise Agreements.

81.     Mr. Lee has breached Sections 9 and 10 of the Franchise Agreements.

82.     Each of Mr. Lee's foregoing breaches constitute a material breach of the Franchise Agreements.

83.     As a direct and proximate result of these breaches, Liberty has incurred and will continue to incur substantial losses, fees, and expense for which Mr. Lee is liable.

84.     As a result of Mr. Lee's past, present, and potential breaches, Liberty has suffered and will continue to suffer actual, substantial, and irreparable damages, including but not limited to:

> A.     Loss of customer goodwill and loyalty;
>
> B.     Loss of business opportunities and relationships to provide tax preparation services and related services;

16

C. Loss of customers;

D. Loss of profits;

E. Loss of franchisee stability;

F. Loss of ability to sell other franchises;

G. Loss of value in confidential business information;

H. Loss of competitive advantage in Weymouth, Randolph, and Quincy, Massachusetts areas and the MA091, MA046, MA087 Territories;

I. Attorneys' fees; and

J. Cost of this action.

85. Liberty has been and will be irreparably harmed by Mr. Lee's actions, and monetary damages are an insufficient remedy in that it can only potentially quantify a limited loss of customers, but cannot take into account the continuing irreparable damage to the value of Liberty's Confidential Information, goodwill, customer loyalty, and its ability to sell franchises, all of which are caused by Mr. Lee's ongoing violations.

86. Unless his wrongful conduct is enjoined, Mr. Lee will continue to breach his obligations by continuing to breach the non-competition and non-solicitation covenants, continuing to use non-Liberty software on Franchised Business computers, and continuing to disclose and use Liberty's Confidential Information.

### COUNT III
*Breach of the Franchise Agreements §§ 9(k), 10(a), 10(b), 10(d)*
*Against Mr. Lee*
*(Monetary Claim)*

87. Liberty repeats and re-alleges the foregoing paragraph as if fully set forth herein.

88. The Franchise Agreements are valid and enforceable.

89. Liberty has performed every obligation and condition required of it under the Franchise Agreements.

90.    Pursuant to Sections 9(k) and 10 of the Franchise Agreements, Mr. Lee agreed to the in-term and post-term non-competition and non-solicitation covenants. *See* Exs. A-B.

91.    Mr. Lee intentionally and maliciously planned to violate the in-term and post-termination non-competition covenants. Mr. Lee caused or acted in concert with TLG to lure customers into the TN111 Franchise Location and subsequently, used TLG as a vehicle to hide revenue from Liberty to avoid royalty payments.

92.    Mr. Lee has been and is currently competing against Liberty and soliciting customers into the former TN111 Franchise Locations, and then preparing and electronically filing income tax returns through TLG on Franchised Business computers. The competition and solicitation occurred during the term of the Franchise Agreements and is anticipated to continue post-termination.

93.    Each of Mr. Lee's foregoing breaches constitute a material breach of the Franchise Agreements.

94.    As a direct and proximate result of Mr. Lee's breaches of Sections 9(k), 10(a), and 10(b) of the Franchise Agreements, Liberty has suffered and will continue to suffer damages in an amount to be proven at trial, for which Mr. Lee is liable, including but not limited to, compensatory damages, consequential damages, and disgorgement of Mr. Lee's profits.

**COUNT IV**
***Tortious Interference with Contract***
***Against TLG***

95.    Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

96.    The Franchise Agreements are valid and enforceable.

97.    TLG knows the existence of the Franchise Agreements through the knowledge of its owner, Mr. Lee. It further knows of the existence of at least, the TN111 Franchise Agreement

because TLG operates out of the former TN111 Franchise Location where the Marks are prominently displayed.

98.    TLG has engaged in the intentional and improper conduct described herein, which induced Mr. Lee to breach various provisions of the Franchise Agreements, including but not limited to:

A.    Preparing and electronically filing income tax returns and providing Financial Products through TLG from the TN111 Franchise Location during the terms of the Franchise Agreements;

B.    Preparing and electronically filing income tax returns and providing Financial Products through TLG from the TN111 Franchise Location, which is within 25-miles of the TN111 Franchise Location and within two-years of the November 24, 2020 termination date;

C.    Preparing and electronically filing income tax returns and providing Financial products through TLG outside of Liberty's system while Mr. Lee was a franchisee under the Franchise Agreements;

D.    Using the Franchised Businesses' computers to prepare and file tax returns using non-Liberty software;

E.    Using Liberty's customer records and information to solicit Liberty's customers to have their tax returns prepared by TLG at the TN111 Franchise Location;

F.    Disclosing Liberty's Confidential Information, including methods of operations, customer information, and marketing information, to other persons and entities, including TLG, without the consent or authorization of Liberty; and

G.    Using Liberty's Confidential Information for purposes other than the operation of the Franchised Businesses, including for the purpose of operating TLG, and soliciting Liberty's customers within the Territories and within 25 miles of the Territories.

99.    As a result of TLG's tortious conduct, Mr. Lee breached the Franchise Agreements with Liberty.

100.    TLG's tortious interference has caused Liberty to suffer irreparable injury and Liberty will continue to suffer irreparable injury unless TLG is enjoined from further tortious

interference with Mr. Lee's compliance with the terms of the Franchise Agreements.

101.    As a direct and proximate result of TLG's tortious interference, Liberty has suffered and will continue to suffer damages in an amount to be proven at trial, including but not limited to, compensatory damages, consequential damages, and disgorgement of TLG's profits.

**COUNT V**
*Federal Trademark Infringement (15 U.S.C. § 1114(1))*
*Against All Defendants*

102.    Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

103.    Liberty is the owner of the trademarks "LIBERTY TAX SERVICE," Registration No. 2,314,991; "LIBERTY TAX," Registration No. 2,465,670; "LIBERTY INCOME TAX," Registration No. 2,459,756; and , Registration No. 2,479,692, among other registered trademarks.  *See* **Exs. C-F**.

104.    Defendants are using the Marks or substantially similar marks to identify their competing services, specifically, Defendants are displaying the following on the exterior of the former Franchise Location facing the road (taken on December 16, 2020):





and in the interior of the office (taken on December 16, 2020):





105. Liberty did not consent to Defendants' use of the Marks or substantially similar

marks for the sale, offer of sale, or advertising of Defendants' goods or services and Defendants' use is likely to cause confusion, cause mistake, and to deceive the public.

106.    Defendants therefore are infringing the Marks in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

107.    Through their unlawful use and display of the Marks, Defendants have profited and Liberty has been damaged.

108.    Defendants' acts have been and are being done knowingly and intentionally to cause confusion, cause mistake, and/or to deceive.

109.    As a result, Liberty has suffered and continues to suffer irreparable injury and has incurred and continues to incur monetary damage in an amount to be determined at trial.

## COUNT VI
*False Designation and Misrepresentation of Origin (15 U.S.C. § 1125(a))*
*Against All Defendants*

110.    Liberty incorporates herein by reference the preceding Paragraphs as if set forth herein verbatim.

111.    Liberty is the owner of the trademarks "LIBERTY TAX SERVICE," Registration No. 2,314,991; "LIBERTY TAX," Registration No. 2,465,670; "LIBERTY INCOME TAX,"

Registration No. 2,459,756; and , Registration No. 2,479,692, among other registered trademarks. *See* Exs. C-F.

112.    Defendants are displaying the Marks or substantially similar marks on the exterior and interior of the office to identify the services provided from Mr. Lee's former Liberty Franchise Location.

113.    Defendants' use of the foregoing Marks and substantially similar marks is therefore

22

likely to cause confusion, cause mistake, and/or deceive as to Defendants' affiliation, connection, or association with Liberty, or as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities.

114. The unlawful conduct of Defendants described herein constitutes false designation of origin and misrepresentation in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

115. As a direct and proximate result of Defendants' wrongful conduct, Liberty has suffered damages to the value of the Marks and to customer goodwill.

116. Defendants' acts have been and are being done knowingly and intentionally to cause confusion, to cause mistake, and/or to deceive.

117. As a result, Liberty has suffered and continues to suffer irreparable injury and has incurred and continues to incur monetary damage in an amount to be determined at trial.

**COUNT VII**
***Unfair Competition***
***Against All Defendants***

118. Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

119. Defendants improperly uses and will continue to use Liberty's Confidential Information and Marks in furtherance of their operation of TLG, which competes directly with Liberty out of the former TN111 Franchise Location, and uses the same computers as the former Franchised Businesses.

120. Through their actions, Defendants are intentionally attempting to deceive Liberty's current and prospective customers for Defendants' business gain.

121. As a direct and proximate result of Defendants' actions, Liberty has suffered and will continue to suffer irreparable injury and is entitled to monetary damages in an amount to be determined at trial.

23

## COUNT VIII
### Violation of Defend Trade Secrets Act of 2016
### Against All Defendants

122.     Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

123.     The Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*, provides a private civil action for the misappropriation of a trade secret that is related to a product or service used in, or intended for use in, interstate or foreign commerce.

124.     Liberty owns numerous trade secrets, including but not limited to, their respective Operations Manuals, training manuals, training programs, methods of operation, marketing strategies, marketing programs, customer lists, and customer information.

125.     Each of Liberty's trade secrets derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

126.     Liberty's trade secrets are not readily ascertainable by the public as they are disclosed only to franchisees in the operation of a franchised business pursuant to a franchise agreement.

127.     Franchisees are licensed to use the trade secrets only pursuant to the franchise agreements in the operation of a Liberty franchise to provide paid tax preparation and related services for customers.

128.     During the operation of the franchises, Liberty's trade secrets were disclosed to Mr. Rubin for the sole purpose of operating the franchised businesses pursuant to the Franchise Agreement.

129.     Liberty has taken extensive measures to preserve and protect these trade secrets for the purpose of maintaining their competitive advantage in the marketplace.

24

130. The Franchise Agreements explicitly provide for the protection of the above referenced trade secrets, including requiring the delivery of all originals and copies of the confidential Operations Manual and customer lists and records to Plaintiff upon expiration, termination, or nonrenewal of the Franchise Agreements, requiring former franchisees and their representatives to maintain the confidentiality of the information, and requiring former franchisees and their representatives to never use the information for any purpose other than operating a franchised business pursuant to the Franchise Agreements.

131. Pursuant to Section 9(i) of the Franchise Agreements, Mr. Lee agreed that upon termination of the Franchise Agreements, he would never use, disclose, or permit the use or disclosure of Liberty's trade secrets in any manner whatsoever, and that he would return all confidential information including trade secrets upon termination.

132. Mr. Lee has failed to return Liberty's confidential and proprietary information and trade secrets including, but not limited to, their Operations Manual and all updates thereto and all copies of customer lists, contact information, and records.

133. Defendants used and are utilizing Liberty's confidential information and trade secrets during and after the termination of the Franchise Agreements in connection with tax preparation done to divert revenues from Liberty, and Liberty has not and would not consent to or authorize such use.

134. Defendants, individually or jointly, intentionally and without Liberty's permission or authorization misappropriated and/or disclosed Liberty's trade secrets for their own economic benefit and with the intention and knowledge that their conduct would injure Liberty by, for example, causing Liberty to lose any customers successfully solicited by Defendants.

135. As a direct and proximate result of Defendants' willful, improper, and unlawful

disclosure and Defendants' willful, improper, and unlawful use of Liberty's trade secrets, Liberty has suffered and will continue to suffer irreparable injury.

136.    Pursuant to 18 U.S.C. § 1836(b)(3)(A), Defendants' actual and threatened use and misappropriation of Liberty's trade secrets should be enjoined from further disclosure or use of Liberty's trade secrets.

137.    Defendants' conduct in misappropriating Plaintiff's trade secrets was and continues to be willful and malicious - warranting an award of reasonable attorneys' fees in accordance with 18 U.S.C. § 1836(b)(3)(D).

138.    Liberty further is entitled to a civil seizure remedy under the DTSA, and request that the Court enter an order providing for the seizure of Liberty's property, including Liberty's Operations Manual and any updates thereto and Liberty's customer records and information.

**<u>COUNT IX</u>**
***Common Law Conversion***
***Against Mr. Lee***

139.    Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

140.    Liberty owns and has the right to possess the following properties by virtue of the Franchise Agreements:

    A.    Any copies, including electronic copies and media, of lists and other sources of information containing the names, addresses, e-mail addresses, or phone numbers of customers who patronized the Franchised Business;

    B.    Any copies, including electronic copies and media, containing, customer tax returns, files, and records; and

    C.    The copy of the Operations Manual and any updates.

141.    Mr. Lee was authorized to use and possess the aforementioned property while operating the former Franchised Businesses pursuant to the Franchise Agreements.

142.    Pursuant to Section 9 of the Franchise Agreements, upon termination of the

26

Franchise Agreements, Mr. Lee was required to transfer and deliver all of the aforementioned property to Liberty.  *See* <u>Exs. A-B</u>.

143.    As of the date of this filing, Mr. Lee has not returned the confidential Operations Manual and any updates thereto.  Upon termination, Mr. Lee did not deliver to Liberty all copies of Liberty's customer records, lists, and information.  As such, Mr. Lee is intentionally interfering with Liberty's use and enjoyment of its property.

144.    Mr. Lee has converted Liberty's property for their financial gain through the solicitation of Liberty's customers to compete directly with Liberty for tax preparation services.

145.    Mr. Lee's interference with Liberty's property by virtue of not transferring or delivering it to Liberty has deprived Liberty of its possession and use of the aforementioned property.

146.    As a direct and proximate result of Mr. Lee's conversion of Liberty's property, Liberty has suffered damages and will continue to suffer damages, for which Mr. Lee is liable, until the aforementioned property is delivered and returned to Liberty.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Liberty prays for judgment against Defendants and:

1.    For the following injunctive relief:

    A.    Enjoin Mr. Lee from breaching his non-competition and non-solicitation covenants for a period of two years from any injunction order;

    B.    Enjoin Defendants from using the Marks;

    C.    Enjoin Defendants from using any of Liberty's Confidential Information;

    D.    Enjoin Defendants from diverting or attempting to divert any customer or business from Liberty or to solicit or endeavor to obtain the business of any person who shall have been a customer of the Franchise Locations for a period of two years from any injunction order; and

          E.       Enjoin TLG from tortiously interfering with Mr. Lee's performance of the Franchise Agreements.

2.       For an order directing Defendants to transfer the telephone number associated with the Franchised Businesses to Liberty;

3.       For an order directing Defendants to deliver to Liberty all original and copies of the Operations Manual and customer records and contact information;

4.       For an accounting of TLG's revenues and profits for all tax return preparation and electronic filing performed since January 1, 2017;

5.       For a monetary award against Defendants in an amount to be proven at trial, including, but not limited to, compensatory damages, expectancy damages, punitive damages, and disgorgement of profits, not less than $46,747.36;

6.       For a monetary award against Defendants for Liberty's attorneys' fees and costs, in an amount to be proven at trial;

7.       For pre- and post-judgment interest; and

8.       For such other relief as the Court deems just and appropriate.

DATED:  January 8, 2021                    Respectfully submitted,

GORDON REES SCULLY MANSUKHANI,
LLP

*/s/Courtney Williams*

Courtney Williams, BPR 037140
3401 Mallory Lane, Suite 120
Franklin, TN 37067
Phone:  (615) 640-0976
Facsimile:  (615) 970-7490
ccwilliams@grsm.com

*/s/ Julia Whitelock*
Julia Whitelock, Pro Hac Vice motion
forthcoming
*Attorneys for Plaintiff JTH Tax LLC d/b/a
Liberty Tax Service f/k/a JTH Tax, Inc.*

# <u>VERIFICATION</u>

Gary Chelliah, being duly sworn, deposes and says:

I am Regional Director for JTH Tax LLC d/b/a Liberty Tax Service f/k/a JTH Tax, Inc. ("Liberty"). I read the foregoing Verified Complaint, know the contents thereof, and state the allegations are true and correct. I base this Verification on my own knowledge, except as to matters therein stated to be alleged upon information and belief, and as to those matters, I believe them to be true and correct. The grounds of my knowledge, information, and belief are derived from my position as Regional Director at Liberty, my personal involvement in the events underlying this litigation, and general investigation of the facts and circumstances described in the Verified Complaint, including, without limitation, my review of Liberty's records and conversations with Liberty's employees.

DocuSigned by:

118670C0D358409...

Garry Chelliah
Regional Director for JTH Tax LLC d/b/a
Liberty Tax Service f/k/a JTH Tax, Inc.

1226721/55618164v.1